**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE S.A., COMMISSION § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | |
| § | |
| MILLENNIUM BANK, § | |
| UNITED TRUST OF SWITZERLAND S.A., § | Case No.: 7:09-CV-050-0 |
| UT of S, LLC, MILLENNIUM FINANCIAL GROUP, § | |
| WILLIAM J. WISE, § | |
| d/b/a STERLING ADMINISTRATION, § | |
| d/b/a STERLING INVESTMENT SERVICES § | |
| d/b/a MILLENNIUM AVIATION, § | |
| KRISTI M. HOEGEL, a/k/a KRISTI M. CHRISTOPHER § | |
| a/k/a BESSY LU, § | |
| JACQUELINE S. HOEGEL, a/k/a JACQULINE S. § | |
| HOEGEL, a/k/a JACKIE S. HOEGEL, § | |
| PHILIPPE ANGELONI, and BRIJESH CHOPRA, § | |
| § | |
| Defendants, § | |
| § | |
| And § | |
| § | |
| UNITED T OF S, LLC, STERLING I.S., LLC, § | |
| MATRIX ADMINISTRATION, LLC, § | |
| JASMINE ADMINISTRATION, LLC, § | |
| LYNN P. WISE, DARYL C. HOEGEL, RYAN D. § | |
| HOEGEL, and LAURIE WALTON § | |
| § | |
| Relief Defendants. § | |
| § | |
| § | |
| RICHARD ROPER, RECEIVER § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | ANCILLARY CIVIL ACTION |
| § | NO. _____ |
| MITCHELL ABBOTT, et al. § | |
| § | |
| Defendant. § | |

**RECEIVER'S COMPLAINT AGAINST CERTAIN WINNING INVESTORS**

Richard Roper, in his capacity as the court-appointed Receiver for Millennium Bank, United Trust of Switzerland S.A., UT of S, LLC, Millennium Financial Group, William J. Wise d/b/a Sterling Administration, William J. Wise d/b/a/ Sterling Investment Services, and William J. Wise d/b/a Millennium Aviation, (the "Receiver") files this Complaint and states:

## I.   INTRODUCTION

1. This case arises out of, and is ancillary to, a lawsuit brought by the Securities and Exchange Commission ("SEC") against Millennium Bank, United Trust of Switzerland S.A., UT of S, LLC, Millennium Financial Group, William J. Wise d/b/a Sterling Administration, William J. Wise d/b/a/ Sterling Investment Services, and William J. Wise d/b/a Millennium Aviation and others named above (collectively, the "SEC Defendants") for claims related to a fraudulent investment scheme created, organized, and operated by William J. Wise and others. That lawsuit is styled *SEC v. Millennium Bank et al.*, No. 7:09-CV-050-0, and is pending in the United States District Court for the Northern District of Texas, Wichita Falls Division ("*SEC v. Millennium Bank, et al.*"). In *SEC v. Millennium Bank, et al.*, the SEC alleges, *inter alia*, that the SEC Defendants engaged in a Ponzi scheme that raised millions of dollars from unwitting investors through the sale of Certificates of Deposit that purported to offer guaranteed interest rates significantly higher than those being offered by domestic, insured financial institutions (the "Ponzi scheme"). The SEC's complaint in *SEC v. Millennium Bank, et al.* [Docket Entry #1] describing the Ponzi scheme is in this Court's record and is incorporated herein by reference. The Receiver's investigation establishes that at least $100 million was taken in from investors from 2004 to 2009.

2. Certain investors, the Ancillary Defendants identified herein as the "Winning Investors," invested in Millennium Bank or a related entity, and received purported interest payments over and above the amounts they initially invested in the CDs (the "Transfers"). The

Receiver brings this Complaint to rescind the transfer of "interest" to these investors because the funds used for the transfers were those of other innocent, unwitting investors in Millennium Bank's fraudulent Ponzi scheme.

3. The Winning Investors not only received from Millennium Bank sums equal to their investments in Millennium CDs, but they also received payments in excess of their respective investments. The money used to make those payments came directly from the sale of CDs to other investors.

4. When Millennium Bank and William Wise made purported CD principal and interest payments to the Winning Investors, they did no more than take money out of other investors' pockets and put it into the hands of the Winning Investors. For the investors who have thus far received little or nothing from their investment in Millennium CDs, money recovered from wherever it resides today is likely the largest portion of the money they will ever receive in restitution. The "interest" paid to Winning Investors is essentially money stolen from other investors, and thus belongs to the Receivership Estate.

5. The Receiver has identified substantial amounts of "interest" paid to the Winning Investors, and through this Complaint, seeks the return of those funds to the Receivership Estate in order to make an equitable distribution to claimants. The Receiver believes that the Winning Investors received in excess of $6 million in interest payments.

## II. PARTIES

6. Plaintiff Richard Roper was appointed as Receiver for the SEC Defendants by order of this Court signed March 25, 2009, and superseded by the Amended Orders Appointing Receiver entered on June 22, 2009, (the "Receivership Order"), which are in the Court's record and incorporated herein by reference. The Receivership Order authorizes the Receiver to, *inter alia*:

> institute such actions or proceedings to impose a constructive trust, obtain possession, and/or recover judgment with respect to persons or entities who received assets or records traceable to the Receivership Estate. All such actions shall be filed in this Court.

¶ 5(c), p. 4.

7. The Defendant Winning Investors are identified in Exhibit A to this Complaint. They may be served with process at the addresses listed in that appendix, according to FED. R. CIV. P. 4 and this Court's order of December 2, 2010 [Docket No. 156]. The amounts received by each Winning Investor are detailed in Exhibit B to this Complaint.

### III.   JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over the matters raised by this lawsuit pursuant to 28 U.S.C. § 1367 because this action is ancillary to *SEC v. Millennium Bank, et al.. See Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 822 (6th Cir. 1981). Moreover, the transfers of purported "interest" as described herein and the resulting claims constitute a Receivership Asset, defined in the Receivership Order as "assets, monies, securities, properties, real and personal, tangible and intangible, of whatever kind and description, wherever located, and the legally recognized privileges (with regard to the entities) of the Defendants and Relief Defendants and all entities they own or control." Receivership Order, ¶ 1, p. 2. This Court assumed exclusive jurisdiction through the Receivership Order, which expressly states that all actions or proceedings instituted by the Receiver related to Receivership Assets *shall* be filed in this Court. Receivership Order, at ¶ 5(c), p. 4.

9. Additionally, this Court has *in rem* and *in personam* jurisdiction over Receivership Property and those who hold it pursuant to 28 U.S.C. §§ 754 and 1692. *Haile v. Henderson Nat. Bank,* 657 F.2d 816, 824 & 826, n. 11 (6th Cir. 1981). The Receiver, within 10 days of his appointment or re-appointment, has filed the Original Complaint and Order

Appointing Receiver or Amended Order Appointing Receiver in each United States District Court in which districts Receivership Assets are believed to be held.

10. Venue is proper in this Court because this action is ancillary to *SEC v. Millennium Bank, et al.*, and pursuant to 28 U.S.C §§ 754 and 1692, the Receiver may sue in the district in which he was appointed to enforce claims anywhere in the country. The Receivership Order also states that all actions or proceedings instituted by the Receiver related to Receivership Assets shall be filed in this Court. *See* Receivership Order at ¶ 5(c), p. 4.

### IV. FACTS AND PROCEDURAL BACKGROUND

11. The Receiver relies on, and hereby incorporates by reference, the specific factual allegations made by the SEC in its complaint against the SEC Defendants.

12. The SEC filed its complaint in the *SEC v. Millennium Bank, et al.* case on March 26, 2009, alleging that the SEC Defendants engaged in the Ponzi scheme.

13. The Court entered an agreed order on March 26, 2009, appointing Richard B. Roper as Receiver for the SEC Defendants, charging him with specific receivership powers and duties.

14. From at least 2004, the SEC Defendants engaged in the Ponzi scheme, which included the sale of purported self-styled "certificates of deposit" and raised over $100 million from investors located primarily in the United States (the "Defrauded Investors").

15. This Court found that the SEC Defendants had engaged in a Ponzi scheme in an evidentiary hearing in *SEC v. Millennium Bank, et al.* which took place on July 9, 2009.

16. Millennium Bank paid "interest" to the Winning Investors, above and beyond the original investments made by the particular investors themselves. The profit received by these investors was fictitious, as their money was never invested and never earned any real interest. Rather, Millennium Bank used the monies invested by later investors to pay "interest" to earlier

investors, and the Ponzi scheme was perpetuated in this way for years. As a result, certain investors received a windfall while others lost the entirety of the principal they put into Millennium Bank.

17. When the Transfers to Winning Investors were made, the assets of Millennium Bank were insufficient to fully reimburse all of the Defrauded Investors for the money each invested in the Ponzi scheme. Millennium Bank, through the other SEC Defendants, knew or should have known at the time of the Transfers that by making them, Millennium Bank would be unable to fully reimburse the Defrauded Investors who had invested in the Ponzi scheme.

18. Millennium Bank made the "interest payments" in an attempt to prevent the Ponzi scheme from being discovered. Thus, Millennium Bank made the Transfers with actual intent to defraud the other investors in the Ponzi scheme.

19. One of the Receiver's key duties is to maximize distributions to defrauded investors and other claimants. See Order Reappointing Receiver at ¶ 5(j), p. 6 (ordering the Receiver to "[p]reserve the Receivership Estate and minimize expenses in furtherance of maximum and timely disbursement thereof to claimants"); *Scholes v. Lehmann*, 56 F.3d 750, 755 (7th Cir. 1995) (receiver's "only object is to maximize the value of the [estate assets] for the benefit of their investors and any creditors"); *SEC v. TLC Invs. & Trade Co.*, 147 F. Supp. 2d 1031, 1042 (C.D. Cal. 2001); *SEC v. Kings Real Estate Inv. Trust*, 222 F.R.D. 660, 669 (D. Kan. 2004). But before the Receiver can attempt to make victims whole, he must locate and take exclusive control and possession of assets of the Estate or assets traceable to the Estate. Order Reappointing Receiver, ¶ 5(b), p. 4.

20. Despite attempts by the SEC and the Receiver to collect Receivership Assets, there are currently insufficient funds to fully reimburse the Defrauded Investors.

21. The Receiver sent a letter to each Winning Investor on July 28, 2010, explaining that the interest each received was paid to them as part of a Ponzi scheme, using the funds of other investors. The Receiver asked each Winning Investor to return the amount of interest they received to avoid litigation to recover it. The letter was sent to 310 Winning Investors, 53 of whom agreed to repay amounts owed as of the date of this Complaint. To date, the Receiver has recovered $ 549,597.46 in fictitious interest paid to Winning Investors.

22. The Winning Investors named in this lawsuit and listed in Appendix A hereto represent those Winning Investors who have refused to pay or otherwise settle the Receiver's claims, or those who simply have not responded to the Receiver's request. The amount the Receiver believes each non-settling Winning Investor received in excess of the principal invested is included in Appendix A along with the investor's name and contact information sufficient for service in this cause. The Receiver believes that the fictitious interest paid to the non-settling Winning Investors totals $5,214,354.13.

23. The Texas Supreme Court has provided that Section 145 of the Restatement (Second) Conflict of Law governs choice of law disputes in tort actions. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 420-21 (Tex.1984). Under § 145, the local law of the state which has the "most significant relationship to the occurrence and the parties" will govern the claim. *Id.;* Restatement (Second) Conflict of Laws § 145(1) (1971). The Winning Investors are scattered all over the country, and William Wise directed the Ponzi scheme from no one place. However, most investors sent their money to Millennium's Napa, California offices. Napa was also one site of operations for the Ponzi scheme, and where most of the employees who dealt with investors were stationed. Choosing the most significant state for a fraudulent scheme that took place across most of the United States and several foreign locales (with no real business

operations at all) is difficult, but California appears to be the state with the most significant common relationship to all of the parties.

## V. CLAIMS

### COUNT ONE

### ACTUAL FRAUDULENT TRANSFER
### CAL. CIV. CODE § 3439.04(a)(1)

24. The preceding paragraphs are hereby incorporated as if set forth fully herein.

25. A Ponzi scheme is, by its nature, a fraudulent enterprise. *See Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008). Transfers made in furtherance of such an enterprise are presumptively fraudulent. *Id*; *In re Slatkin*, 525 F.3d 805, 814 (9th Cir. 2008); *In re AFI Holding, Inc.*, 525 F.3d 700, 704 (9th Cir. 2008).

26. Millennium Bank transferred "interest payments" to Winning Investors in excess of the original principal invested by those investors in the CD product. These Transfers were fraudulent as to Millennium Bank's creditors, including the other investors, pursuant to the Uniform Fraudulent Transfer Act, Cal. Civ. Code § 3439 *et seq*.

27. The claims of Millennium Bank's creditors, including the other investors in the Ponzi scheme, arose before or within a reasonable time after the transfer of fictitious "interest payments."

28. Millennium Bank made the "interest" transfer payments with the actual intent to hinder, delay, or defraud its creditors, including the other investors.[1]

29. Therefore, the Transfers should be avoided pursuant to Cal. Civ. Code § 3439.07(a)(1). *Donell v. Kowell*, 533 F.3d 762, 772 (9th Cir. 2008) ("If investors receive more than they invested, payments in excess of amounts invested are considered fictitious profits

---

[1] Millennium Bank engaged in all relevant actions herein through its managers, members, and control persons; specifically the other SEC Defendants.

because they do no represent a return on legitimate investment activity," and such payments "are avoidable as fraudulent transfers."). Further, a judgment should be entered in favor of the Receiver and against each Winning Investor for the amount of fictitious interest they received pursuant to Cal. Civ. Code § 3439.08(b). These proceeds are directly traceable to the funds of other Defrauded Investors.

## COUNT TWO

## CONSTRUCTIVE FRAUDULENT TRANSFER
## CAL. CIV. CODE § 3439.04(a)(2)

30. The preceding paragraphs are hereby incorporated as if set forth fully herein.

31. Without receiving reasonably equivalent value in exchange for the transfer of "interest" payments above the amounts initially invested as principal, Millennium Bank engaged in transactions for which the remaining assets of Millennium were unreasonably small in relation to its business.

32. Without receiving reasonably equivalent value in exchange for the transfer of "interest" payments, Millennium intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due, including the claims of the Defrauded Investors.

33. Therefore, the Transfers—"interest" payments beyond a particular investor's investment of principal—should be avoided pursuant to Cal. Civ. Code § 3439.07(a)(1). *Donell v. Kowell*, 533 F.3d 762, 772 (9th Cir. 2008) ("If investors receive more than they invested, payments in excess of amounts invested are considered fictitious profits because they do no represent a return on legitimate investment activity," and such payments "are avoidable as fraudulent transfers."). Further, judgments for these amounts should be entered in favor of the

Receiver and against Winning Investors, who received more money than they put into the scheme, pursuant to Cal. Civ. Code § 3439.08(b).

### COUNT THREE

### UNJUST ENRICHMENT

34. The preceding paragraphs are hereby incorporated as if set forth fully herein.

35. Winning Investors, who received more money than they invested, were unjustly enriched at the expense of other investors, based on principles of justice, equity, and good conscience. The transfer of fictitious "interest" payments caused certain investors to receive money that belonged to other investors for no reasonably equivalent exchange. Because of the nature of the Ponzi scheme and the fact that Millennium Bank's assets are insufficient to fully repay all of its creditors, investors who had not yet received their principal back from Millennium Bank will only receive a fraction of the amount of their investments back from Millennium. It would be fundamentally unfair to allow certain investors to receive profits truly belonging to other investors while the latter stand to recover little to none of their original investments. *Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008) ("The 'winners' in the Ponzi scheme, even if innocent of any fraud themselves, should not be permitted to enjoy an advantage over later investors sucked into the Ponzi scheme who were not so lucky.").

36. Moreover, the Ponzi scheme involved actual fraud and was the source of the transfer of "interest" payments. The Transfers also involved actual fraud on the part of the SEC Defendants. As a third-party beneficiary who obtained the "interest" through the SEC Defendants' fraud, Winning Investors, who actually profited, were unjustly enriched and are not entitled to retain the profits.

37. The funds used for the Transfers are directly traceable to funds of the other investors in the Ponzi scheme. As such, they constitute Receivership Assets and are impressed

with a constructive trust and should be disgorged and paid to the Receiver for ultimate distribution equitably among all defrauded investors.

## COUNT FOUR

## CONSTRUCTIVE TRUST

38. The preceding paragraphs are hereby incorporated as if set forth fully herein.

39. Because the Transfers constitute fraudulent transfers under California law, and/or because those investors who received payments in excess of their principal have been unjustly enriched by the Transfers, the funds used for the Transfers are impressed with a constructive trust and should be disgorged. *See* Cal. Civ. Code § 2224 ("One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.").

40. The Receiver has a superior equitable interest to recover the investor funds used to pay interest above and beyond the principal invested by certain invested. Once the funds are recovered, it is anticipated that they will be distributed on a pro rata basis to the Defrauded Investors who lost money and to appropriate Millennium creditors. The Receiver alone is in a position to redistribute the limited funds available to the Receivership Estate, including those the Receiver should be awarded based on the transfer of "interest."

41. Pursuant to the principles of equity, the Receiver seeks the imposition of a constructive trust on the profits received by Winning Investors as described herein, and the immediate turnover of such funds to the Receiver.

42.     To the extent that the Winning Investors are unable to return the funds received, the Receiver seeks a money judgment against each of them in an amount equal to the "interest" they received.

## VI.     RELIEF REQUESTED

THEREFORE, the Receiver requests a judgment against each Winning Investor for the amount of "interest" payments made or the actual Transfers received over and above the principal amount he or she each invested. In addition, the Receiver request that it be awarded pre-judgment interest on the amount of "interest" payments received directly or indirectly by the Winning Investors from the SEC Defendants.[2] Further, the Receiver requests that it be granted any other relief, both special and general, to which it may be justly entitled.

Dated this 1st day of March, 2011.

Respectfully submitted,

**THOMPSON & KNIGHT, LLP**

/s/ Jennifer Ecklund
William L. Banowsky
State Bar No. 01697125

Jennifer Ecklund
State Bar No. 24045626

1722 Routh Street
One Arts Plaza, Suite 1500
Dallas, Texas 75201
Tel. (214) 969-1700
Fax (214) 969-1751

**COUNSEL TO THE RECEIVER, RICHARD B. ROPER**

---

[2] *Donell v. Kowell*, 533 F.3d 762, 772 (9th Cir. 2008) ("Once the district court has identified the avoidable transfers, it has the discretion to permit the receiver to recover pre-judgment interest on the fraudulent transfers from the date each transfer was made.")

## CERTIFICATE OF SERVICE

On March 1, 2011, I electronically submitted the foregoing document to the Clerk of the Court for the United States District Court for the Northern District of Texas using the electronic case filing system of the Court.

/s/ Jennifer Ecklund
Jennifer Ecklund